IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. LKG 25-224 |
| v. | * | (Theft from an ERISA Plan, 18 U.S.C. § 664; Aiding and Abetting, 18 U.S.C. § 2; Money Laundering, 18 U.S.C. § 1957; Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c)) |
| JAMES VINCENT CAMPBELL, | * | |
| Defendant | * | |

*******

## INDICTMENT

The Grand Jury for the District of Maryland charges that:

At all times material to this Indictment:

### General Allegations

1. The Service Contract Act (41 U.S.C.A. §§ 6701-07) requires federal contractors to pay their employees the prevailing wage for the particular trade and geographic area, as well as a specific dollar amount to be paid for employee benefits. The Wage Hour Division of the United States Department of Labor issues a public wage determination which obligates the contractor to pay, for example, $27.00 per hour in wages and $5.36 per hour in benefits for all of their employees.

2. Contractors may elect to satisfy the benefit requirement in the Service Contract Act by offering any of the approved list of benefits such as health care, pension benefits, pre-paid dental, pre-paid legal, etc.

3. In 2011, Defendant James CAMPBELL formed Axim Fringe Solutions Group, LLC ("Axim") in Rockville, Maryland to operate as a payroll processor for federal contractors on the benefit portion of their prevailing wage determination due under the Service Contract Act. From 2011 to the date of the indictment, Defendant CAMPBELL served as Axim's CEO.

4. Federal contractors who signed contracts for services from Axim paid the prevailing wages from the wage determination directly to their employees but transferred the benefit portion from the wage determination as required by the Service Contract Act to Axim. When the client engaged Axim, they executed a master trust agreement regarding Axim's master trust ("Master Trust") for all its clients, as well as a participation sub-trust agreement dedicated to the funds of the particular client (the "Client's Sub Trust"). Axim deposited all the remittances of benefit proceeds from each of its clients into the Master Trust. Thereafter, the various client's remittances were transferred to the Client Sub Trust designated for the particular client. From that subtrust, the client's premiums were paid to health care insurers to provide health insurance to the client's employees. Axim transferred any funds remaining after payment from the Client Subtrust to the health care insurer to a 401(k) account designated for the individual employees.

5. An "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1002) was any plan, fund, or program which is established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, certain welfare benefits described in ERISA, including benefits for medical and hospital care, sickness, accident, and disability. The remittances from clients Axim's placed into the Master Trust constituted the moneys, funds, securities, premiums, credits, property and other assets of those client's employee welfare benefit plans. The funds of Axim transferred from the Master Trust into the respective Client's Subtrusts constituted the moneys, funds, securities, premiums, credits, property and other assets of those client's employee welfare benefit plans.

6. From December 16, 2015 to June 6, 2022, Defendant CAMPBELL made more than one

hundred thirty-five (135) unauthorized withdrawals from the Master Trust prior to the sending the remitted funds to the clients' respective subtrusts. Those withdrawals were in addition to the $40 per month per employee fee Axim charged its clients for Axim's services. A significant portion of those unauthorized withdrawals were used by CAMPBELL for personal use including big game hunting trips in Alaska, Africa and elsewhere; taxidermy fees; jewelry; casino gambling; direct payments to his girlfriend; and uncategorized withdrawals of cash.

## COUNT ONE

### (18 U.S.C. § 664)
### (Theft from an ERISA Plan)

1. The allegations contained in paragraphs 1 through 6 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. From on or about July 30, 2020 through November 29, 2021, in the District of Maryland, the defendant, JAMES VINCENT CAMPBELL, did embezzle, steal and unlawfully and willfully abstract and convert to his own use in the approximate amount of $2,486,905 in unauthorized withdrawals from the Master Trust constituting the moneys, funds, securities, premiums, credits, property and other assets of the employee welfare benefit plans of its clients, subject to Title I of the Employee Retirement Income Security Act of 1974 and of a fund connected with such plan.

All in violation of Title 18, United States Code, Section 664.

## COUNTS TWO through TWELVE

### (18 U.S.C. § 1957)
### (Money Laundering)

1. The allegations contained in paragraphs 1 through 6 of the General Allegations of this Indictment and paragraphs 1 and 2 of Count One are realleged in these Counts and are incorporated by reference as if fully set forth herein.

2. On or about the dates set forth below, in the District of Maryland, and elsewhere, Defendant James CAMPBELL, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the, deposit, withdrawal, transfer, and exchange of funds, such property having been derived from a specified unlawful activity, that is, theft from an ERISA plan, in violation of 18 U.S.C. § 664:

| Count | Date | Monetary Transaction |
|---|---|---|
| 2 | On or about July 30, 2020 | Wire Transfer by CAMPBELL of $52,748.44 from the Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Fringe Solutions Group, LLC Payroll |
| 3 | On or about August 13, 2020 | Wire Transfer by CAMPBELL of $52,748.44 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Fringe Solutions Group, LLC Payroll |
| 4 | On or about August 21, 2020 | Wire Transfer by CAMPBELL of $16,775.53 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to Bill.com Payables |
| 5 | On or about September 30, 2020 | Wire Transfer by CAMPBELL of $54,377.78 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Fringe Solutions Group, LLC Payroll |
| 6 | On or about September 30, 2020 | Wire Transfer by CAMPBELL of $18,500.00 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Managed Retirement Services, LLC Operating Account at Eagle Bank (Acct Number 4338) for Payroll |

| 7 | On or about October 13, 2020 | Wire Transfer by CAMPBELL of $12,400.00 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Managed Retirement Services, LLC Operating Account at Eagle Bank (Acct Number 4338) for Payroll |
| --- | --- | --- |
| 8 | On or about October 14, 2020 | Wire Transfer by CAMPBELL of $47,539.36 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Fringe Solutions Group, LLC Payroll |
| 9 | On or about September 14, 2021 | Wire Transfer by CAMPBELL of $47,210.69 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Fringe Solutions Group, LLC Payroll |
| 10 | On or about October 14, 2021 | Wire Transfer by CAMPBELL of $11,500.00 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to Future Mind Consulting, LLC Account at Eagle Bank (Acct Number 0520) |
| 11 | On or about November 12, 2021 | Wire Transfer by CAMPBELL of $44,605.42 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to the Axim Fringe Solutions Group, LLC Payroll |
| 12 | On or about November 12, 2021 | Wire Transfer by CAMPBELL of $14,826.83 from Axim Fringe Solutions Group, LLC Operating Account at Eagle Bank (Acct Number 2851) to Axim Fringe Solutions Group, LLC Payroll Tax. |

All in violation of Title 18, United States Code, 18 U.S.C. §§ 1957 and 2.

## FORFEITURE ALLEGATION on THEFT and FRAUD
### (18 U.S.C. § 981(a)(1)(C))

1. The allegations contained in Counts One through Twelve of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offenses set forth in Counts One through Twelve of this Indictment, Defendant JAMES VINCENT CAMPBELL shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses of conviction. The property to be forfeited includes, but is not limited to, at least $2,486,905 in money and property taken by Defendant JAMES VINCENT CAMPBELL; and

3. If any of the property described above, as a result of any act or omission of Defendant JAMES VINCENT CAMPBELL:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: July 24, 2025

_David Jaffe /vjf_
DAVID JAFFE
CHIEF, VIOLENT CRIME AND
RACKETEERING SECTION
UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION

_[signature]_
TRIAL ATTORNEY
Vincent J. Falvo, Jr.,
United States Department of Justice

Dated: July 24, 2025